Slip Op. 10-121

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR FASTENER DIVISION, : | |
| : | |
| Plaintiff, : | |
| : | Before:     WALLACH, Judge |
| v.                                    : | Court No.:  09-00534 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| XL SCREW CORPORATION, et al., : | |
| : | |
| Defendant-Intervenors. : | |

[Defendant's Motions to Dismiss and Defendant-Intervenors' Motion to Dismiss are GRANTED.]

Dated:          October 22, 2010

Wiley Rein LLP (Alan H. Price, Daniel B. Pickard, and Maureen E. Thorson) for Plaintiff Nucor Fastener Division.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Joshua E. Kurland); and Ahran Kang McCloskey, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

Barnes, Richardson & Colburn (Matthew T. McGrath, Jeffrey S. Neely, Stephen W. Brophy, Cortney O. Morgan, Michael S. Holton) for Defendant-Intervenors XL Screw Corporation, The Hillman Group, Bossard North America, Inc., and Heads and Threads International, LLC.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

Plaintiff Nucor Fastener Division ("Nucor" or "Plaintiff") challenges the U.S. Department of Commerce's ("Commerce" or the "Department") decision not to investigate an alleged subsidization by the People's Republic of China ("PRC" or "China") of the Chinese standard steel fastener industry through currency manipulation. Because Nucor's challenge is unripe, the Motions to Dismiss filed by Defendant United States ("Defendant") and Defendant-Intervenors XL Screw Corporation, The Hillman Group, Bossard North America, Inc., and Heads and Threads International, LLC (collectively, "Defendant-Intervenors") are GRANTED, and this action is dismissed in its entirety, but without prejudice.

## II
## BACKGROUND

### A
### Legal Overview

Before either antidumping or countervailing duties ("CVD") can be imposed, Commerce and the U.S. International Trade Commission ("ITC") must each render affirmative determinations after conducting separate investigations. See 19 U.S.C. §§ 1671, 1673. "The central aim of the antidumping laws is to protect domestic industries from foreign manufactured goods that are sold injuriously in the United States at prices below the fair market value of those goods in their home market." U.S. Steel v. United States, 637 F. Supp. 2d 1199, 1204 (CIT 2009).

> [CVDs] are imposed on foreign products that are imported, sold, or likely to be sold in the United States, where the foreign government is directly or indirectly

> subsidizing the manufacture, production, or export of that merchandise. The
> purpose of CVDs is to level the playing field in international trade by offsetting
> the unfair advantage that a foreign exporter receives through subsidies.

Royal Thai Gov't v. United States, 31 CIT 1213, 1217-18, 502 F. Supp. 2d 1334 (2007) (citations omitted).

In its antidumping and CVD investigations, Commerce respectively determines whether the subject imports are, or are "likely to be, sold in the United States at less than its fair value," 19 U.S.C. §1673(1), and whether "the subject imports are in fact being subsidized," Wolff Shoe Co. v. United States, 141 F.3d. 1116, 1117 (Fed. Cir. 1998). Commerce in its CVD investigation determines, inter alia, whether the alleged subsidy "is a specific subsidy, in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy." 19 U.S.C. § 1677(5A)(D). "The specificity test was intended to function as a rule of reason and to avoid the imposition of [CVDs] in situations where, because of the widespread availability and use of a subsidy, the benefit of the subsidy is spread throughout an economy." The Uruguay Round Agreements Act Statement of Administrative Action, H.R. Doc. 103-316 (1994),[1] at 222, reprinted in 1994 U.S.C.C.A.N. 4040, 4242 (emphasis omitted).

ITC undertakes a related inquiry in investigating allegations of dumping or subsidization. Antidumping duties and CVDs can be imposed if ITC "determines that—(A) an industry in the United States—(i) is materially injured; or (ii) is threatened with material injury." 19 U.S.C. §§ 1671(a)(2), 1673(2). In its investigation, ITC "cumulatively assess[es] the volume and effects of

---

[1] The Uruguay Round Agreements Act was signed into law on December 8, 1994. The Act approved the new WTO Agreement, and the agreements annexed thereto, "resulting from the Uruguay Round of multilateral trade negotiations [conducted] under the auspices of the General Agreement on Tariffs and Trade." 19 U.S.C. § 3511(a)(1). The Statement of Administrative Action approved by Congress to implement the Agreements is regarded as "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements] Act in any judicial proceeding in which a question arises concerning such interpretation or application." Id. § 3512(d).

imports of the subject merchandise" from countries that are subject to the review. Id. § 1677(7)(G). Whether petitioners allege dumping or subsidization, in its investigations ITC renders a preliminary determination, "based on the information available to it at the time of the determination, whether there is a reasonable indication" of injury or threat thereof. Id. §§ 1671b; 1673b. If ITC at this preliminary stage "makes a negative determination . . . the investigation shall be terminated." Id. § 1671b(a)(1); see also 19 C.F.R. § 351.207(d) ("An investigation terminates automatically upon publication in the Federal Register of the . . . Commission's negative preliminary . . . determination.").

### B
### The Administrative Proceedings

In September 2009, Nucor filed antidumping and CVD petitions with Commerce and ITC concerning imports of certain standard steel fasteners from PRC and Taiwan. See Certain Standard Steel Fasteners From [PRC]: Initiation of [CVD] Investigation, 74 Fed. Reg. 54,543, 54,543 (October 22, 2009) ("Initiation Notice"); Certain Standard Steel Fasteners From [PRC] and Taiwan: Initiation of Antidumping Duty Investigation, 74 Fed. Reg. 54,537, 54,538 (October 22, 2009); Certain Standard Steel Fasteners From China and Taiwan, 74 Fed. Reg. 49,889, 49,890 (September 29, 2009) ("ITC Notice"). ITC that month instituted a preliminary investigation "to determine whether there is a reasonable indication that an industry in the United States is materially injured or threatened with material injury . . . by reason of imports from China and/or Taiwan." ITC Notice, 74 Fed. Reg. at 49,889.

In October 2009, Commerce "initiat[ed] a CVD investigation to determine whether manufacturers, producers, or exporters of standard steel fasteners in the PRC receive countervailable subsidies." Initiation Notice, 74 Fed. Reg. at 54,545. The period of

investigation was calendar year 2008. Id. at 54,543.  Commerce included in its CVD investigation twenty-six specific programs that Nucor alleged to have provided countervailable subsidies. Id. at 54,545-46.  Commerce declined to investigate alleged currency manipulation, stating as follows:

> [Nucor] alleges that the [government]-maintained exchange rate effectively prevents the appreciation of the Chinese currency (["RMB"]) against the U.S. dollar.  Therefore, when producers/exporters in the PRC sell their dollars at official foreign exchange banks, as required by law, the producers receive more RMB than they otherwise would if the value of the RMB were set by market mechanisms. . . .  [Nucor] has failed to sufficiently allege that the receipt of the excess RMB is contingent on export or export performance because receipt of the excess RMB is independent of the type of transaction or commercial activity for which dollars are converted or of the particular company or individuals converting the dollars.  Therefore, <u>we do not plan on investigating this program because [Nucor] has failed to properly allege the specificity element</u>.

Id. at 54,546 (emphasis added).

In November 2009, ITC rendered its preliminary determination. See Certain Standard Steel Fasteners From China and Taiwan; Determinations, 74 Fed. Reg. 58,978 (November 16, 2009).  ITC found "that there is no reasonable indication that an industry in the United States is materially injured or threatened with material injury . . . by reason of imports from China." Id.  In its report, ITC included the following bases for its determination:

- there was not a "reasonable indication that subject imports have had an adverse impact on the domestic industry during the period examined;"

- "[t]he domestic industry maintained substantial and increasing operating profits from 2006 to 2008;" and

- there was not a "significant correlation between subject imports and any declines in the industry's profitability."

Certain Standard Steel Fasteners From China and Taiwan, Investigation Nos. 701-TA-472 and 731-TA-1171-1172 (Preliminary), U.S. International Trade Commission (November 2009) ("ITC Preliminary Determination") at 29.

ITC further concluded that there was "no reasonable indication of a threat of material injury by reason of cumulated subject imports from China and Taiwan." Id. at 31 (emphasis omitted). In its cumulation analysis, ITC found that, "by quantity, U.S. shipments of subject imports from China declined during the period examined." Id. at 34. ITC thereafter noted as follows: "Nor is there any indication on this record that any of the subsidies allegedly conferred by the Government of China on producers of subject merchandise would cause us to reach a different conclusion." Id. at 34 n.227 (emphasis added). Given the negative ITC Preliminary Determination, both Commerce and ITC "terminated" their investigations pursuant to statute. 19 U.S.C. § 1671b(a)(1); see 19 C.F.R. § 351.207(d).

### C
### Nucor's Litigation

In December 2009, Nucor initiated companion cases in this court challenging determinations of ITC and Commerce, respectively. See Complaint; Nucor v. United States, Court No. 09-531, Complaint ("ITC Complaint"). Nucor's ITC Complaint asserts jurisdiction based on 28 U.S.C. § 1581(c) and alleges that the ITC Preliminary Determination "was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." ITC Complaint ¶¶ 1, 6-11. Briefing on Nucor's ITC challenge is underway and is expected to be complete in December 2010. See Nucor, Court No. 09-531, September 20, 2010 Order.

In the instant action challenging Commerce, Nucor "seeks judicial review of the Department's decision not to initiate a [CVD] investigation into subsidies provided by the Government of China to its standard steel fastener industry by means of enforced undervaluation of the [RMB]." Complaint ¶ 1. Nucor asserts jurisdiction based on 28 U.S.C. § 1581(i) or, "in the alternative," 28 U.S.C. § 1581(c). Id. ¶¶ 2-3. Nucor's Complaint contains the following footnote explaining its connection with the ITC challenge:

> Plaintiff has also filed an appeal of the [Commission's] negative preliminary injury determination. Plaintiff notes that the Commission is required by law in its preliminary determinations to determine whether there is a reasonable indication that a U.S. industry is threatened with material injury by reason of subject imports and, in so doing, to take into account all export subsidies being investigated by the Department. To the extent that the Department unlawfully or without substantial record evidence failed to initiate a subsidy investigation into the enforced undervaluation of the [RMB], <u>its decision may have affected the Commission's negative preliminary determination</u>.

Complaint at 2-3 n.2 (emphasis added) (citation omitted); see also ITC Complaint at 3 n.1.

### III
### STANDARD OF REVIEW

In deciding a motion to dismiss, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). When jurisdiction is challenged, "[t]he party seeking to invoke this Court's jurisdiction bears the burden of proving the requisite jurisdictional facts." Former Employees of Sonoco Prods. Co. v. United States, 27 CIT 812, 814, 273 F. Supp. 2d 1336 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).

## IV
## DISCUSSION

Nucor's challenge to Commerce's Initial Notice decision not to investigate the alleged currency manipulation is not ripe for judicial review. Infra, Part IV.A. Defendant and Defendant-Intervenors' Motions to Dismiss are therefore granted, albeit without prejudice for Nucor to re-file in the event that its challenge subsequently becomes ripe for review. The argument to dismiss based on mootness,[2] and the argument to dismiss based on statutory jurisdiction,[3] need not be resolved because of the dismissal based on ripeness. The stay requested by Nucor as an alternative to dismissal is not appropriate. Infra, Part IV.B.

### A
### Nucor's Commerce Challenge Is Not Ripe

Ripeness is a "justiciability doctrine" that "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 807-08, 123 S. Ct. 2026, 155 L. Ed. 2d

---

[2] Nucor responds to the mootness argument by claiming that the Initiation Notice affected the ITC Preliminary Determination. See Nucor's Opposition to Defendant and Defendant-Intervenors' Motions to Dismiss ("Nucor's Opposition") at 5 ("By failing to initiate a subsidy investigation into the enforced undervaluation of [RMB], the Department's actions detrimentally and wrongfully impacted the Commission's preliminary determination, thereby causing injury to Plaintiff."). However, the speculation in Nucor's Complaint that the Initiation Notice "may have affected" the ITC Preliminary Determination is belied by the ITC statement that consideration of the alleged subsidies would not have resulted in "a different conclusion." Complaint at 3 n.2; ITC Preliminary Determination at 34 n.227.

[3] Because the ripeness deficit is attributable to Commerce not having made a "final determination" with respect to its CVD investigation, jurisdiction cannot exist under 28 U.S.C. § 1581(c). 19 U.S.C. § 1516a(a)(1)(D); see infra Part IV.A.1. Nucor argues that 28 U.S.C. § 1581(i) provides jurisdiction because "the Department's decision not to investigate a particular subsidy allegation is not one of the enumerated decisions" subject to judicial review in 28 U.S.C. § 1581(c). Nucor's Opposition at 15. 28 U.S.C. § 1581(i) is a "catch-all provision." Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992). Legislative history explains that 28 U.S.C. § 1581(i) can be used for cases contesting Commerce in CVD proceedings "so long as the action does not involve a challenge to a determination specified in" 19 U.S.C. § 1516a. H.R. Rep. No. 96-1235 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3760. However, 28 U.S.C. § 1581(i) cannot be used to circumvent the "final determination" requirement. 19 U.S.C. § 1516a(a)(1)(D). Defendant is correct that "this Court has repeatedly declined to exercise jurisdiction pursuant to 28 U.S.C. § 1581(i) in the absence of final agency determinations. . . . Thus, regardless of whether one views the case through the lens of ripeness or simple lack of statutory jurisdiction, there is no basis for Nucor's premature challenge to Commerce's actions." Defendant's Memorandum in Support of its Motion to Dismiss at 18 (citations omitted).

1017 (2003) (quotations omitted). "In determining whether an appeal from an administrative determination is ripe for judicial review," courts look "to (1) 'the fitness of the issue for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). Nucor's challenge to the Initiation Notice is not fit for review, infra Part IV.A.1, and Nucor will not suffer hardship if that challenge is not reviewed, infra Part IV.A.2.

### 1
### Nucor's Challenge To The Initiation Notice Is Not Fit For Review

Nucor's challenge to the Initiation Notice is unfit for review because the Commerce investigation terminated by statute before Commerce could render a reviewable decision. See 19 U.S.C. § 1671b(a)(1); ITC Preliminary Determination. Pursuant to statute, actions taken by Commerce as part of its CVD investigation become reviewable when there is a "final determination." 19 U.S.C. § 1516a(a)(1)(D). This requirement reflects:

> The essential purpose of the ripeness doctrine . . . "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

Tokyo Kikai, 529 F.3d at 1362 (quoting Abbott Labs., 387 U.S. at 148-49).

Allowing Nucor's challenge to the Initiation Notice to proceed despite the statutory termination of the underlying investigation would constitute impermissible "judicial interference." Id. In Tokyo Kikai, Commerce's stated intent to reopen an antidumping proceeding was unfit for review as a non-final action. See id. at 1363. The Federal Circuit found that the "memorialized intention . . . neither 'marks[s] the consummation . . . of the

decisionmaking process' nor defines rights or obligations . . . or causes legal consequences to flow." Id. (quoting Bennett v. Spear, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997). As explained by the Federal Circuit:

> A stated intention . . . is just that, and leaves room for Commerce to change course. Although Commerce stated that it intended to reopen the . . . proceedings, it could, for any number of reasons, elect not to do so. This is precisely the reason why courts decline to address issues that are not "ripe."

Id.

Nucor's Commerce challenge is likewise unfit for review because it is not a "final determination." 19 U.S.C. § 1516a(a)(1)(D). As with the stated intention to reopen proceedings in Tokyo Kikai, the Initial Notice stated intention not to investigate currency manipulation left "room for Commerce to change course."[4] Tokyo Kikai, 529 F.3d at 1363. Commerce did not finalize its investigation scope because of the ITC Preliminary Determination. See 19 U.S.C. § 1671b(a)(1). Nucor pleads that the ITC "negative injury determination put an end to the Department's investigation, and thus the negative aspects of the subsidy initiation could be considered final." Complaint ¶ 3. However, Defendant is correct that "the statutory termination of Commerce's investigation due to the ITC's negative preliminary determination does not convert Commerce's Initiation Notice into a 'final determination'" that is fit for review. Defendant's Motion at 19-20 (quotation omitted).

**2**
**Nucor Will Not Suffer Hardship If Its Challenge To The Initiation Notice Is Not Reviewed**

Relying on precedent from this court, Nucor claims it "will suffer hardship if the court chooses to withhold review." Nucor's Opposition to Defendant and Defendant-Intervenors'

---

[4] Indeed, Commerce can and does reconsider the scope during the course of ongoing CVD investigations. See Preliminary Affirmative [CVD] Determination: Carbon and Certain Alloy Steel Wire Rod from Canada, 67 Fed. Reg. 5,984, 5,985 (February 8, 2002).

Motions to Dismiss ("Nucor's Opposition") at 11-12 (citing <u>Internor Trade, Inc. v. United States</u>, 10 CIT 826, 651 F. Supp. 1456 (1986)).  In <u>Internor</u>, although Commerce determined that the subject imports were sold at less than fair value, an antidumping order was not published because of the ITC negative injury determination. <u>See</u> <u>Internor</u>, 10 CIT at 827.  Despite argument that adjudication of the Commerce decision "could well prove advisory," the case was found ripe for review. <u>Id.</u> at 830, 832.  Nucor argues that, "[s]imilar to the plaintiffs in <u>Internor Trade, Inc.</u>, Plaintiff will suffer hardship if the court withholds review in this case." Nucor's Opposition at 12.  Defendant in response explains that "because the Commerce action at issue was a final decision, the Court in <u>Internor</u> determined that the statutory language in effect at that time specifically authorized jurisdiction over the final Commerce antidumping decision." Defendant's Reply Memorandum in Support of Its Motion to Dismiss ("Defendant's Reply") at 10.

   <u>Internor</u> does not show Nucor suffered hardship that makes its Commerce challenge ripe for review.  Unlike the final Commerce action at issue in <u>Internor</u>, Nucor here challenges an intended scope of investigation. <u>See </u>Complaint ¶ 1; <u>Internor</u>, 10 CIT at 827.  Nucor states that denying its Commerce challenge "will not only result in immediate hardship to Plaintiff but also could effectively preclude judicial review of the issue altogether." Nucor's Opposition at 13.  However, this alleged hardship requires only that Nucor bring a challenge that the court is able to adjudicate.  Defendant-Intervenors are correct in stating "that a Plaintiff cannot receive judicial review of . . . unripe issues is not a hardship.  There can be no hardship on the parties for withholding court consideration of this issue until the normal process is completed." Reply Brief in Support of Defendant Intervenors' Motions to Dismiss This Action ("Defendant-Intervenors' Reply") at 10.

**B**
**Nucor's Requested Stay Is Not Appropriate**

Nucor in the alternative "submits that the Court should stay this action pending a decision in the companion challenge to the Commission's preliminary determination, rather than dismiss Plaintiff's appeal." Nucor's Opposition at 13-14.  Defendant and Defendant-Intervenors oppose such a stay. See Defendant's Reply at 11; Defendant-Intervenors' Reply at 10 n.2.  A stay would impermissibly leave in this court an action over which it lacks jurisdiction. Nucor correctly conceded at oral argument that if its Commerce challenge is found to be unripe, there is no jurisdiction to grant the requested stay. See September 16, 2010 Oral Argument at 12:41-14:02.  A stay cannot be granted. See id.; supra, Part IV.A.

**V**
**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss and Defendant-Intervenors' Motion to Dismiss are GRANTED, and this action is dismissed in its entirety, but without prejudice.


　　　　　　　　　　　　　　　　　　　　__/s/ Evan J. Wallach____
　　　　　　　　　　　　　　　　　　　　Evan J. Wallach, Judge


Dated:  October 22, 2010
　　　　New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR FASTENER DIVISION, | : |
| Plaintiff, | : |
| v. | : Before: WALLACH, Judge |
| UNITED STATES, | : Court No.: 09-00534 |
| Defendant, | : |
| and | : |
| XL SCREW CORPORATION, <u>et al.</u>, | : |
| Defendant-Intervenors. | : |

## **ORDER AND JUDGMENT**

This case having come before the court upon Defendant's Motion to Dismiss ("Defendant's Motion") and the Motion of Defendant-Intervenors to Dismiss this Action filed by XL Screw Corporation, The Hillman Group, Bossard North America, Inc., and Heads and Threads International, LLC ("Defendant-Intervenors' Motion"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and, after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED that Defendant's Motion is GRANTED; and it is further

ORDERED, ADJUDGED, and DECREED that Defendant-Intervenors' Motion is GRANTED; and it is further

ORDERED, ADJUDGED, and DECREED that Plaintiff's Complaint be, and hereby is, DISMISSED without prejudice; and it is further

ORDERED, ADJUDGED, and DECREED that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff.

\_\_/s/ Evan J. Wallach\_\_\_\_
Dated: October 22, 2010                    Evan J. Wallach, Judge
       New York, New York